IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GOLDA MARIE TROYCHECK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 22-395 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| *Acting Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 18th day of September, 2023, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)). *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] The Court, in this matter, is attempting to look back in time to determine whether Plaintiff was disabled on or before her date last insured on December 31, 2014. Given that the alleged onset date was July 18, 2013, the Court, as did the Administrative Law Judge ("ALJ"), is considering evidence regarding a fairly narrow window of time. The ALJ found that the

evidence did not establish disability during this time frame. Naturally, Plaintiff raises a number of arguments as to why she believes this finding was wrong. Keeping in mind the time frame at issue, the Court finds no merit in any of Plaintiff's various contentions and instead finds that the ALJ's decision is supported by substantial evidence.

Plaintiff first asserts that the ALJ erred in failing to find her edema to constitute a severe impairment at Step Two of the sequential analysis set forth in the Social Security Administration's regulations and, in fact, in failing to find it to be a medically determinable impairment at all. She further contends that, in any event, the ALJ failed to account for her edema in formulating her residual functional capacity ("RFC"). The Court disagrees.

First, the Court notes that the Step Two determination as to whether a claimant is suffering from a severe impairment is a threshold analysis requiring the showing of only one severe impairment. *See Bradley v. Barnhart*, 175 Fed. Appx. 87, 90 (7th Cir. 2006). Hence, so long as a claim is not denied at Step Two, it is not generally necessary for the ALJ specifically to have found any additional alleged impairment to be severe. *See Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007); *Lee v. Astrue*, Civ. No. 06-5167, 2007 WL 1101281, at *3 n.5 (E.D. Pa. Apr. 12, 2007); *Lyons v. Barnhart*, Civ. No. 05-104, 2006 WL 1073076, at *3 (W.D. Pa. Mar. 27, 2006); *Gerald v. Berryhill*, No. 3:17-CV-00575, 2018 WL 7364649, at *5 (M.D. Pa. Oct. 12, 2018), *report and recommendation adopted*, No. CV 3:17-575, 2019 WL 719829 (M.D. Pa. Feb. 19, 2019). Here, the ALJ found that Plaintiff did have severe impairments to satisfy Step Two; since Plaintiff's claim was not denied at that step, it does not matter whether the ALJ erred in failing to find that Plaintiff's edema was also a severe impairment.

However, Plaintiff is correct that it does matter whether the ALJ properly accounted for the limitations caused by any impairments in formulating Plaintiff's RFC. In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184 (S.S.A.), at *5 (July 2, 1996). *See also* 20 C.F.R. § 404.1545(a)(2). "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim." SSR 96-8p at *5. Accordingly, merely because the ALJ did not find Plaintiff's edema to be a severe impairment does not mean that this condition could not still have affected Plaintiff's RFC. However, here the ALJ adequately addressed Plaintiff's claims of edema in crafting the RFC.

Plaintiff claims that her edema caused the need for her to elevate her legs for around two hours for every one-to-two hours of sitting and standing (R. 990-91) and argues that this restriction should have been included in the RFC. She suggests that the ALJ not only failed to address this issue as part of the Step Two analysis, but that he did not account for her edema at all. A reading of the opinion as a whole, though, demonstrates that the ALJ did consider Plaintiff's edema, and her claimed need to elevate her legs regularly, in formulating Plaintiff's RFC. While edema was not discussed at Step Two, the ALJ referenced this condition several times while explaining his RFC findings. Moreover, he expressly acknowledged Plaintiff's testimony at the administrative hearing on September 16, 2021 regarding her need to elevate her legs. (R. 931,

932, 933, 935). However, the ALJ found Plaintiff's testimony to be not entirely consistent with the medical and other record evidence. (R. 932). In do doing, he discussed Plaintiff's generally unremarkable medical imaging records and examination findings, including numerous findings that she had normal strength and gait, the conservative nature of her treatment, inconsistencies between her testimony and her work experience, and her activities of daily living.

The ALJ was not, of course, required to accept Plaintiff's testimony without question, *see* 20 C.F.R. § 404.1529(c)(4); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011), and here he relied on more than substantial evidence in finding Plaintiff's testimony to be lacking in credibility. Plaintiff's claims about needing to lift her legs for extended periods because of her edema were based solely on her own testimony; no treating source prescribed or suggested such activity, much less offered an opinion that such activity was medically necessary. As noted, the ALJ clearly acknowledged Plaintiff's allegations about elevating her legs and deemed these allegations to be inconsistent with the record. Accordingly, it was not error to omit any such limitations from the RFC.

Thus, it is not relevant whether the ALJ should have discussed Plaintiff's edema as part of his Step Two analysis. He considered and disregarded the only limitation that Plaintiff herself suggests should have been included in the RFC to account for this edema. The Court also notes that, while not dispositive, edema was mentioned very little in these proceedings, and Plaintiff said nothing about this condition or her need to lift her legs at the first administrative hearing on May 3, 2017. It is not surprising, then, that while edema was acknowledged, it was not discussed in great detail.

Plaintiff next argues that the ALJ failed to incorporate into the RFC findings all of the limitations to which her treating and consulting doctors opined. She first challenges the ALJ's rationale for giving little weight to the opinion of Plaintiff's primary care physician Rachel Talaman-Perez, M.D. (R. 1518-21), who found Plaintiff's limitations as to sitting/standing/walking and postural limitations would preclude even sedentary work. While acknowledging that Dr. Talaman-Perez's opinion was dated September 1, 2021 – many years after her date last insured – Plaintiff claims that it expressly related back to July 10, 2014 – which would be during her insured period. She asserts that the ALJ improperly discounted Dr. Talaman-Perez's intention for her opinion to relate back to the insured period and that this opinion should have therefore been given greater weight. Again, the Court disagrees.

To be clear, Dr. Talaman-Perez did indicate in her September 2021 Medical Assessment of Ability to do Work-Related Activities for Social Security Disability and/or SSI Disability that her opinion was "complete regarding conditions as of June 10, 2014." (R. 1518). Under this date, in parentheses, she further stated, "Saw orthopedic for CTS," *i.e.*, carpal tunnel syndrome. (*Id.*). The ALJ, in affording Dr. Talaman-Perez's assessment little weight, did note that the opinion was dated well after the date last insured, but also that it lacked specificity in some areas, was a mere check-box form, and was inconsistent with evidence from the relevant time period. (R. 938). Plaintiff may disagree with the ALJ's analysis, but substantial evidence supports his determination.

Plaintiff seems to believe that Dr. Talaman-Perez's opinion covers the relevant time period simply because she said that it does. However, the ALJ is of course correct that this opinion was issued years after Plaintiff's date last insured, and there is no indication as to how Dr. Talaman-Perez came to her conclusions for a period seven years earlier. Few if any of her treatment records are in evidence, and the earliest passing references to her are from 2019. At the second hearing, Plaintiff's counsel suggested that Dr. Talaman-Perez "completed the report from looking at the records and going back" (R. 969), but there is little indication in the check-box form completed by Dr. Talaman-Perez how she came to her conclusions at all, much less how she related them back to a time that appears to predate her relationship with Plaintiff by a number of years.

As noted, the ALJ discussed this lack of specificity and the fact that Dr. Talaman-Perez merely completed a check-box form, which the Third Circuit Court of Appeals has characterized as being of limited probative value. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). Moreover, as noted above, the ALJ discussed the objective medical evidence from the relevant period, and how it did not demonstrate limitations to the extent to which Dr. Talaman-Perez opined, at significant length.

Plaintiff's argument that the ALJ erred by not affording more weight to consultative examiner Victor Jabbour, M.D. (R. 440-55), fares no better. Shortly after the relevant time period, on February 23, 2015, Dr. Jabbour examined Plaintiff and opined that she had several limitations more serious than what was included in the RFC, particularly involving her ability to sit/stand/walk and her manipulative abilities. Again, though, the Court finds that the ALJ relied on more than substantial evidence to support the weight given to this opinion. While it is true that Dr. Jabbour's report was from only 54 days after Plaintiff's date last insured – rather than seven years – the ALJ mentioned this fact only in passing, and his consideration of Dr. Jabbour's opinion was based primarily on other factors. Indeed, in his lengthy discussion of the opinion, the ALJ emphasized its inconsistency with the objective medical evidence, including Dr. Jabbour's own clinical findings, Plaintiff's conservative treatment history, her part-time work as a cashier which required her to work with her hands, and her daily activities. He also pointed out that Dr, Jabbour was wrong about Plaintiff's dominant hand, making his opinion, particularly regarding Plaintiff's manipulative abilities, less persuasive.

Plaintiff takes issue with the ALJ's omission of other limitations that she believes were established by the evidence as well, including her potential as a fall risk and that she would be off-task and absent beyond acceptable limits. However, the ALJ did not include these limitations because he did not find them to be supported by the record. Indeed, other than the fact that Plaintiff did fall a couple times during the relevant year and a half period in 2013-2014, there is no evidence that she was ever identified as a fall risk by any medical provider. Regardless, as the Court has discussed throughout, the ALJ provided reasoning and support for his findings, and the Court finds those findings to be adequate. The Court further notes that there were a number of medical opinions in this case, several of which were consistent with, or even less restrictive than, the ALJ's RFC findings. The ALJ considered all of them and from them crafted the RFC,

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 16) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 18) is GRANTED as set forth herein.

s/Alan N. Bloch<br>United States District Judge

ecf:            Counsel of record

---

which is precisely what an ALJ is supposed to do.  *See Titterington v. Barnhart*, 174 Fed. Appx. 6, 11 (3d Cir. 2006); *Chandler*, 667 F.3d at 362

There is a good deal of medical evidence in this case pertaining to the relevant period, and it stands to reason that Plaintiff would come to a different conclusion as to what that evidence demonstrates.  However, if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently.  *See Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); *Berry*, 738 F. Supp. at 944 (*citing Cotter*, 642 F.2d at 705).  "The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009).  Accordingly, the Court may not – and will not – draw its own conclusions from the record evidence.

One last argument made by Plaintiff is that the ALJ failed to correctly determine her education level.  She contends that, pursuant to the testimony of the vocational expert ("VE"), consideration of her marginal reading ability would have impacted the VE's findings as to what jobs Plaintiff could perform.  However, the ALJ discussed this issue at significant length, weighing Plaintiff's testimony and decades old test scores with evidence that she had, in fact, performed work in the past commensurate with the mental demands of the jobs to which the VE testified, such as a childcare work and a cashier  The ALJ also emphasized that the RFC included numerous restrictions to account for Plaintiff's learning disorder.  (R. 935-36).  Once again, the ALJ's rationale was thorough and supported by substantial evidence.

It must again be emphasized that it is not the role of the Court to re-weigh the evidence and come to its own conclusion.  The ALJ here based his decision on a thorough review of the record, including objective medical evidence such as diagnostic imaging and largely unremarkable examination results, Plaintiff's treatment history, and a number of medical opinions.  This constitutes substantial evidence sufficient to support his decision, especially in light of the United States Supreme Court's reminder that the threshold for meeting the substantial evidence standard "is not high." *Biestek*, 139 S. Ct. at 1154.  Accordingly, the Court will affirm.